**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| FERNANDO GARCIA,<br>Plaintiff,<br><br>v.<br><br>CITY OF FALFURRIAS, TEXAS; MARTIN CABRERA, in his individual capacity; CECILY RAMIREZ, in her individual capacity; and RUBEN RAMIREZ, in his individual capacity,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. ____-cv-______<br>JURY<br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Fernando Garcia files this Original Complaint against Defendants City of Falfurrias, Texas, Martin Cabrera, Cecily Ramirez, and Ruben Ramirez, and alleges as follows:

## I. PRELIMINARY STATEMENT

1. This case arises from a small-town political purge dressed up as a performance problem. Fernando Garcia, the sixty-eight-year-old Finance Director of the City of Falfurrias, reported to the Texas Division of Emergency Management his concerns that the City's Fire Chief was exercising authority the law did not give him. He spoke as a citizen, to a state agency, about the lawful administration of his local government.

2. The response was swift and public. On May 7, 2025, Alderwoman-Elect Cecily Ramirez denounced Garcia by name on Facebook for "talking to the state" about the Fire Chief and vowed that "it's not going to happen on our watch! At least not on mine!" Within weeks of the new council taking office, the same Fire Chief—installed as "Interim City Administrator" though he was not even on the City's payroll—suspended Garcia without pay on fabricated "performance" grounds. Four days later, on July 7, 2025, the Board of Aldermen voted to terminate him without

notice, without a hearing, and without responding to the written grievance he had filed. The City then replaced him with a substantially younger former subordinate.

3. Garcia sues under 42 U.S.C. § 1983 for retaliation against his protected speech and political association in violation of the First and Fourteenth Amendments, and for deprivation of property and liberty without due process of law in violation of the Fourteenth Amendment. He also sues the City under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), and Chapter 21 of the Texas Labor Code ("TCHRA").

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and supplemental jurisdiction over his state-law claim under 28 U.S.C. § 1367(a), because that claim arises from the same nucleus of operative fact as the federal claims.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in Brooks County, Texas. Venue lies by district, not division; Congress abolished divisional venue in 1988. See Pub. L. No. 100-702, § 1001(a), 102 Stat. 4642, 4664 (1988) (repealing 28 U.S.C. § 1393). Plaintiff files in the McAllen Division: Falfurrias sits essentially equidistant between the McAllen and Corpus Christi courthouses, and the McAllen courthouse is substantially closer to Plaintiff's residence in Cameron County.

## III. PARTIES

6. Plaintiff Fernando Garcia is a citizen of Texas residing at 12 Pizarro Avenue, Rancho Viejo, Texas 78575. He was born in 1956 and was sixty-eight years old when the City terminated his employment.

7. Defendant City of Falfurrias, Texas (the "City") is a Type A general-law municipality organized under the laws of the State of Texas. It may be served with process through its Mayor, Martin Cabrera, at 120 West Rice Street, Falfurrias, Texas 78355. At all relevant times the City employed more than twenty employees and is an "employer" within the meaning of 29 U.S.C. § 630(b) and Tex. Lab. Code § 21.002(8)(D).

8. Defendant Martin Cabrera is the Mayor of the City of Falfurrias. At all relevant times he acted under color of state law. He is sued in his individual capacity and may be served at 120 West Rice Street, Falfurrias, Texas 78355, or wherever he may be found.

9. Defendant Cecily Ramirez is an Alderwoman of the City of Falfurrias. At all relevant times, including as Alderwoman-Elect, she acted under color of state law. She is sued in her individual capacity and may be served at 120 West Rice Street, Falfurrias, Texas 78355, or wherever she may be found.

10. Defendant Ruben Ramirez is the City's Fire Chief and purported "Interim City Administrator." At all relevant times he acted under color of state law, jointly with and at the direction of City officials, notwithstanding that he held no lawful appointment. He is sued in his individual capacity and may be served at 120 West Rice Street, Falfurrias, Texas 78355, or wherever he may be found.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELINESS

11. No administrative exhaustion is required for Plaintiff's claims under 42 U.S.C. § 1983. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982).

12. Plaintiff timely filed a charge of discrimination against the City with the Equal Employment Opportunity Commission ("EEOC"), dual-filed with the Texas Workforce Commission Civil Rights Division, on or about November 25, 2025—within 180 days of his July

7, 2025 termination, as the TCHRA requires, Tex. Lab. Code § 21.202(a), and within 300 days, as the ADEA requires in a deferral state, 29 U.S.C. § 626(d)(1)(B). EEOC Charge No. 451-2026-03693.

13. On April 27, 2026, at Plaintiff's request, the EEOC issued its Determination and Notice of Rights, terminating its processing of the charge without any adjudication of the merits. Plaintiff files this action within ninety days of his receipt of that notice. 29 U.S.C. § 626(e).

14. The EEOC made no finding adverse to Plaintiff, and no administrative determination could bar this action in any event: unreviewed administrative findings have no preclusive effect on ADEA claims, *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 110–11 (1991), and an agency determination that does not follow a judicial-capacity adjudication has no preclusive effect on § 1983 claims, see *University of Tennessee v. Elliott*, 478 U.S. 788, 796–99 (1986).

15. As to the TCHRA claim, more than 180 days have elapsed since the charge was filed, and the Texas Workforce Commission has not issued its own notice of right to file a civil action; the EEOC's notice does not trigger the sixty-day filing period of Tex. Lab. Code § 21.254. *Vielma v. Eureka Co.*, 218 F.3d 458, 462–67 (5th Cir. 2000). This action is brought within two years of the filing of the charge. Tex. Lab. Code § 21.256.

16. All conditions precedent to the filing of this action have been performed or have occurred. Fed. R. Civ. P. 9(c).

## V. FACTUAL ALLEGATIONS

### A. Garcia's Employment and His Report to the State

17. The City hired Garcia as its Finance Director on December 4, 2024. Garcia is a seasoned municipal finance officer who previously served the City of San Benito. Before the events described below, the City never gave him a written warning, a negative performance evaluation, or any formal discipline.

18. In the spring of 2025, Garcia and then-City Manager Martin Saenz contacted the Texas Division of Emergency Management ("TDEM") to report their concern that Fire Chief Ruben Ramirez, who also held himself out as the City's Emergency Management Coordinator, was acting outside his statutory authority.

19. Communicating with TDEM about the Fire Chief's authority formed no part of Garcia's ordinary job duties as Finance Director. Garcia's duties concerned the City's finances—budgeting, accounting, requisitions, and payroll—not emergency management, fire administration, or personnel oversight of the Fire Chief. Garcia spoke as a citizen reporting suspected official overreach to the state agency responsible for emergency management.

### B. The Public Vow of Retaliation

20. On May 7, 2025, days after the municipal election, Alderwoman-Elect Cecily Ramirez published a Facebook post condemning Garcia and Saenz by name. She wrote that Fire Chief Ruben Ramirez had told her that "our City Manager Martin Saenz and Financial Director Fernando Garcia have been in contact with [the state] trying to remove Ruben as our Emergency Management Coordinator," and she vowed: "it's not going to happen on our watch! At least not on mine!"

21. The post, which garnered scores of reactions, comments, and shares in the small community, publicly identified Garcia's protected report to TDEM as the grievance to be avenged

and aligned Garcia with the outgoing administration of City Manager Saenz—the faction the incoming council majority, including Cecily Ramirez and Mayor Cabrera, had campaigned against.

**C. The Suspension by a Man with No Lawful Authority**

22. After the new council took office, Fire Chief Ruben Ramirez began acting as "Interim City Administrator." On information and belief, he was never lawfully appointed to that position, was not on the City's payroll for it, and completed none of the City's onboarding requirements.

23. Whether or not lawfully appointed, Ruben Ramirez acted under color of state law: he wielded authority conferred and enabled by the City's officials, and the misuse of power made possible only by the wrongdoer's clothing with state authority is action taken under color of state law. *West v. Atkins*, 487 U.S. 42, 49–50 (1988).

24. On July 3, 2025, Ruben Ramirez, signing as "Interim City Administrator," issued Garcia a "Notice of Suspension for Lack of Performance," suspending him without pay effective July 3 through July 7, 2025, ordering him out of city offices, and directing him to surrender his keys and devices that same day. The letter recited complaints about Garcia's "attitude," his processing of requisitions, and his purported unprofessionalism toward vendors.

25. Those recitals were false. Garcia had received no written warnings, no performance evaluations, and no documented complaints of any kind. The suspension letter identified no specific incident, no complainant, and no document.

26. The suspension also violated the City's own Employee Policy Manual (effective December 6, 2017, as amended 2021) ("EPM"). The EPM permits suspension without pay only by the City Administrator—"[u]nless another staff member is designated in writing, the City Administrator is the sole person authorized to sign a suspension notice"—and commands that

"[t]he employee must be given an opportunity to respond to allegations in the notice of suspension." EPM, Changes in Employment Status and/or Position ¶ 4 (Suspension). Ruben Ramirez was not the City Administrator, no written designation existed, and Garcia was afforded no opportunity to respond.

27. The same day, Garcia submitted a written grievance to Mayor Cabrera, copying the City Council and City Attorney. He objected that the suspension was issued without lawful authority, that he had received no prior warnings or evaluations, that the charges against him were false, and he demanded that the matter be addressed. The grievance requested that Garcia be heard before any action was taken against him.

28. The EPM's grievance policy required more. It directs that a complaint alleging retaliation for "reporting a violation of law to an appropriate authority" begin at Level Two and that the City Administrator ensure the matter "reaches the City Council expeditiously," with the Council's decision within thirty days; it obligates the City Clerk to investigate written allegations that City action violated an employee's "common law, statutory, or constitutional rights"; and it entitles the employee to a City Council hearing. EPM, Grievance Procedures ¶¶ 5–6. It further promises that "[n]either the City Administrator nor the City Council shall unlawfully retaliate against any employee for bringing a complaint under this policy." Id. ¶ 7.

**D. The Termination Without Notice or Hearing**

29. On July 7, 2025—the first business day after the grievance and the last day of the purported suspension—the Board of Aldermen, led by Mayor Cabrera and Alderwoman Cecily Ramirez, voted to terminate Garcia's employment. The City gave Garcia no pre-termination notice of the charges against him, no explanation of the evidence, and no opportunity to respond, and it never responded to his grievance or afforded him any hearing, before or after termination.

30. The termination likewise defied the EPM, which provides that "[b]efore discharge is considered for any reason," the City will weigh the employee's length of service and past contributions and "investigate all possible alternatives to discharge, including reassignment." EPM, Termination of Employment ¶ 4. The Board weighed nothing and investigated nothing. Instead of processing the pending grievance through the investigation and Council hearing its own policy mandated, the Council answered it with a termination vote.

31. Mayor Cabrera signed the Notice of Dismissal informing Garcia that the Board had terminated his employment and directing him to return City property to Ruben Ramirez.

32. The City subsequently installed Rebecca Alvarado—Garcia's former subordinate, a woman in her mid-forties and substantially younger than Garcia—in his position.

**E. The Pretext**

33. The stated grounds for Garcia's suspension and termination—"lack of performance" and "attitude"—were pretexts. The true reasons were Garcia's protected report to TDEM, his association with the prior administration, and his age. The sequence tells the story: a public vow of political retribution naming Garcia in May; the installation of the very official Garcia had reported, who then suspended him in July; and a termination vote four days later by the council members who had campaigned against his faction, without a shred of documented performance deficiency and without process of any kind.

34. The City's wholesale departure from its own written procedures—an unauthorized signer, no opportunity to respond, no evaluations, no pre-discharge review, a mandatory grievance process answered with a termination vote—is itself evidence that impermissible purposes were at work. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267 (1977) (departures from normal procedural sequence evidence improper purpose);

*Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n.29 (5th Cir. 2005) (employer's failure to follow its own internal policy raises an inference of pretext).

**F. Municipal Liability**

35. The Board of Aldermen is the City's final policymaking authority with respect to the employment and removal of municipal officers and employees. See Tex. Loc. Gov't Code § 22.077 (vesting removal authority in the governing body). Its July 7, 2025 vote to terminate Garcia was itself an official act of the municipality: a single decision by a municipality's authorized final policymaker constitutes official policy for purposes of § 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978).

36. In the alternative, the Board ratified the retaliatory suspension imposed by Ruben Ramirez, adopting both the decision and its unlawful basis. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion).

## VI. CAUSES OF ACTION

37. Plaintiff pleads each of the following counts, and each theory of liability and causation within them, in the alternative to the extent any may be regarded as inconsistent. Fed. R. Civ. P. 8(d)(2)–(3).

### COUNT ONE

### 42 U.S.C. § 1983 — First Amendment Retaliation (Speech)

### (Against All Defendants)

38. Plaintiff incorporates the foregoing paragraphs.

39. A public employee states a First Amendment retaliation claim by showing that (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse action. *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016); see *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

40. Garcia's report to TDEM was citizen speech. It was made outside his ordinary job duties as Finance Director, *Lane v. Franks*, 573 U.S. 228, 240 (2014); *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), and it was made externally, to a state agency, concerning a subject—the Fire Chief's exercise of emergency-management authority—wholly removed from Garcia's financial portfolio. Speech disclosing evidence of official overreach or malfeasance addresses a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 148 (1983); *Anderson*, 845 F.3d at 595.

41. Garcia's interest in reporting suspected official overreach to the responsible state agency far outweighs any interest the City could assert in workplace efficiency, particularly where the City identified no disruption attributable to the speech and its stated grounds for discipline were fabricated.

42. The speech motivated the suspension and termination. Cecily Ramirez publicly identified the speech itself—"contacting the state"—as the offense and vowed retribution; the subject of the report then personally suspended Garcia; and the Board, led by Cabrera and Cecily Ramirez, terminated him days later. Garcia's protected speech was at minimum a substantial or motivating factor in the adverse actions, and Defendants cannot show they would have taken the same actions absent the speech. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

43. Each individual Defendant participated personally: Cecily Ramirez publicly declared and then helped execute the retaliation; Ruben Ramirez issued the retaliatory suspension; and Cabrera led the termination vote and signed the dismissal. The City is liable because the Board's vote was the act of its final policymaker. *Pembaur*, 475 U.S. at 480–81.

44. Defendants' conduct caused Garcia lost pay and benefits, emotional distress, and reputational harm, for which he seeks the relief set out below.

**COUNT TWO**

**42 U.S.C. § 1983 — First Amendment Retaliation (Political Association)**

**(Against All Defendants)**

45. Plaintiff incorporates the foregoing paragraphs.

46. The First Amendment forbids government officials to discharge public employees for their political affiliation or association unless political loyalty is an appropriate requirement for the effective performance of the office. *Elrod v. Burns*, 427 U.S. 347, 372–73 (1976) (plurality opinion); *Branti v. Finkel*, 445 U.S. 507, 518 (1980); see *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79 (1990).

47. Garcia was publicly identified with the outgoing administration of City Manager Saenz—the faction the incoming council majority campaigned against and, in Cecily Ramirez's words, was elected to sweep out ("Thank God the community spoke up and elected a new council!"). Defendants suspended and terminated Garcia because of that association.

48. Political loyalty is not an appropriate requirement for the position of Finance Director of a Type A general-law municipality. The position's duties—accounting, budgeting, requisitions, and payroll—are professional and ministerial, defined by generally accepted accounting standards

and state law rather than by partisan or factional goals, and the position is not a confidential or policymaking adjunct of any elected official.

49. Each Defendant participated in the associational retaliation as alleged above, and the City is liable through the act of its final policymaker. Garcia suffered the damages set out below.

**COUNT THREE**

**42 U.S.C. § 1983 — Fourteenth Amendment Procedural Due Process (Property)**

**(Against All Defendants)**

50. Plaintiff incorporates the foregoing paragraphs.

51. A public employee who has a legitimate claim of entitlement to continued employment possesses a property interest protected by the Due Process Clause, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), and such an entitlement may arise from ordinances, personnel policies, or mutually explicit understandings, *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972). Before termination, the employee is entitled to notice of the charges, an explanation of the employer's evidence, and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).

52. Garcia had a legitimate claim of entitlement to continued employment from two independent sources. First, on information and belief, the Finance Director is an appointed officer of the City, and Texas law permits a Type A general-law municipality to remove an appointed officer for incompetency, corruption, misconduct, or malfeasance only after due notice and an opportunity to be heard. Tex. Loc. Gov't Code § 22.077. On information and belief, the Board neither provided that process nor removed Garcia by the alternative statutory mechanism of a two-thirds lack-of-confidence vote of the elected aldermen. Second, and in the alternative, the EPM and

each employee's signed acknowledgment provide that, absent a written contract, employment "is terminable in accordance with the policies in this manual," and the EPM prescribes categorized for-cause grounds for discharge, mandatory pre-discharge consideration of alternatives, suspension only by the City Administrator with an opportunity to respond, and a grievance process culminating in a City Council hearing. Those commitments, together with § 22.077 and the parties' course of dealing, gave Garcia a legitimate claim of entitlement to continued employment absent cause and compliance with the prescribed procedures. *Perry v. Sindermann*, 408 U.S. at 601–02. Plaintiff acknowledges that the EPM elsewhere recites at-will status and disclaims contractual effect; the statutory protection of § 22.077 does not depend on the EPM, and the effect of the City's conflicting written commitments cannot be resolved on the pleadings.

53. Defendants deprived Garcia of that property interest without any process: a suspension without pay imposed summarily by an official with no lawful authority to act for the City, followed by termination without pre-deprivation notice, without disclosure of evidence, without any opportunity to be heard, and without any response to his written grievance.

54. Each Defendant participated personally in the deprivation, and the City is liable through the act of its final policymaker. Garcia suffered the damages set out below.

**COUNT FOUR**

**42 U.S.C. § 1983 — Fourteenth Amendment Deprivation of Liberty Without Due Process**

**(Denial of a Name-Clearing Hearing) (Against the City, Cabrera, and Ruben Ramirez)**

55. Plaintiff incorporates the foregoing paragraphs.

56. A discharged public employee is deprived of liberty without due process where (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge;

(3) the charges were false; (4) he received no notice or opportunity to be heard before discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request. *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006); see *Rosenstein v. City of Dallas*, 876 F.2d 392, 395–96 (5th Cir. 1989), *reinstated in relevant part en banc*, 901 F.2d 61 (5th Cir. 1990) (per curiam).

57. The City discharged Garcia amid false and stigmatizing charges—incompetence, insubordinate "attitude," and unprofessional conduct toward vendors—leveled in the suspension letter and aired publicly in a small community in which Cecily Ramirez's viral post had already framed Garcia's conduct as disloyal wrongdoing. The charges were false; Garcia received no pre-termination notice or hearing; his written grievance—which the EPM entitled him to have investigated and heard by the City Council—disputed the charges and requested to be heard; and the City never responded. Those publicly aired accusations foreclosed Garcia's ability to obtain comparable employment in municipal finance.

58. Garcia seeks, among other relief, a name-clearing hearing and the damages set out below.

**COUNT FIVE**

**Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634**

**(Against the City Only)**

59. Plaintiff incorporates the foregoing paragraphs.

60. The ADEA makes it unlawful for an employer to discharge any individual because of his age. 29 U.S.C. § 623(a)(1). Garcia, age sixty-eight at termination, is within the protected class, 29 U.S.C. § 631(a); he was qualified for his position; he was discharged; and he was replaced by a

substantially younger person—a former subordinate in her mid-forties, more than twenty years his junior. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996).

61. Age was the but-for cause of Garcia's discharge. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009). The City's stated reasons—undocumented "performance" and "attitude" complaints, invented weeks before the termination of a sixty-eight-year-old employee with a clean record and deployed to install a substantially younger replacement—are false, and their falsity supports the inference of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48 (2000).

62. The City's violation was willful: it acted with knowledge of, or reckless disregard for, whether its conduct violated the ADEA, entitling Garcia to liquidated damages. 29 U.S.C. § 626(b); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985).

**COUNT SIX**

**Texas Labor Code Chapter 21 — Age Discrimination**

**(Against the City Only)**

63. Plaintiff incorporates the foregoing paragraphs.

64. The TCHRA makes it unlawful for an employer to discharge an employee because of age. Tex. Lab. Code § 21.051(1); id. § 21.101 (protecting individuals forty and older). Garcia establishes a prima facie case: he was a member of the protected class, qualified, discharged, and replaced by someone younger. *Mission Consolidated Independent School District v. Garcia*, 372 S.W.3d 629, 632–34 (Tex. 2012).

65. Under the TCHRA, Garcia need show only that age was a motivating factor in the discharge. Tex. Lab. Code § 21.125(a); *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 480

(Tex. 2001). The facts alleged above establish that age motivated the City's decision and that its stated reasons are pretextual.

**VII. THE INDIVIDUAL DEFENDANTS' ANTICIPATED IMMUNITY DEFENSES FAIL**

66. Qualified immunity does not protect the individual Defendants. By 2025 it was clearly established that a public employee may not be disciplined for speech made externally, outside his ordinary job duties, reporting official malfeasance to a state body. *Lane v. Franks*, 573 U.S. 228, 235–41 (2014); *Anderson v. Valdez*, 845 F.3d 580, 600–01 (5th Cir. 2016). The later decision in *Anderson v. Valdez*, 913 F.3d 472 (5th Cir. 2019), which found the right not clearly established as applied to a judicial briefing attorney whose oath of office arguably encompassed the speech at issue, has no application here: no duty or oath of the Finance Director's office encompassed reporting the Fire Chief's conduct to TDEM. It was likewise clearly established that patronage dismissal of a non-policymaking employee violates the First Amendment, *Branti v. Finkel*, 445 U.S. 507, 518 (1980), and that a public employee with a property interest in his job is entitled to notice and an opportunity to respond before termination, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).

67. Absolute legislative immunity does not apply. The suspension and termination of a single, identified employee is an administrative personnel action, not legislation; it bears none of the hallmarks of the elimination of a position through budgetary enactment that *Bogan v. Scott-Harris*, 523 U.S. 44, 55–56 (1998), held legislative.

## VIII. DAMAGES

68. As a direct and proximate result of Defendants' conduct, Garcia has suffered and will suffer lost wages and benefits, past and future; emotional pain, suffering, and mental anguish; and injury to his professional reputation and earning capacity.

69. The individual Defendants acted with evil motive or intent, or with reckless or callous indifference to Garcia's federally protected rights, warranting punitive damages against them under § 1983. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiff does not seek punitive damages against the City under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

## IX. JURY DEMAND

70. Plaintiff demands trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fernando Garcia respectfully requests that the Court enter judgment in his favor and against Defendants and award him:

a. A declaratory judgment under 28 U.S.C. §§ 2201–02 that Defendants violated the First and Fourteenth Amendments, the ADEA, and the TCHRA;

b. Reinstatement to his position as Finance Director, or front pay in lieu of reinstatement;

c. Back pay and lost benefits, with prejudgment and postjudgment interest;

d. Compensatory damages for emotional distress, mental anguish, and reputational injury on his § 1983 and TCHRA claims;

e. Liquidated damages under 29 U.S.C. § 626(b) for the City's willful violation of the ADEA;

f. Punitive damages against Defendants Cabrera, Cecily Ramirez, and Ruben Ramirez in their individual capacities;

g. A name-clearing hearing;

h. Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988(b), 29 U.S.C. § 626(b), and Tex. Lab. Code § 21.259; and

i. All other relief, legal or equitable, to which he is justly entitled.

Respectfully submitted,

LAW OFFICE OF MARK E. SOSSI, P.C.

By: /*s/ Mark E. Sossi*

Mark E. Sossi
S.D. Tex. Federal ID No. 63169
Texas State Bar No. 18855680
222 East Van Buren, Suite 700A
Harlingen, Texas 78550
Telephone: 956.455.5414
Email: marksossi@sossi.law

ATTORNEY FOR PLAINTIFF
FERNANDO GARCIA